UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

CHARLES SHATEEK SMITH
(Name of plaintiff)

Vs.

BENJAMIN L. KELLY
SEATTLE Police Department

_____

_____
(Name of Defendants)

No. C11-0623 RAJ JPD

CIVIL RIGHTS COMPLAINT
BY A PRISONER UNDER 42
U.S.C. § 1983

___ FILED
___ LODGED   MAIL
___ RECEIVED

APR 12 2011

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____

I.   **Previous Lawsuits:**

   A. Have you brought any other lawsuits in any federal court in the United States while a prisoner:   ☐ Yes  ☒ No

   B. If your answer to "A" is yes, how many? _____ Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline).

   _____

   _____

1.   Parties to this previous lawsuit:

   Plaintiff_____

   _____

   Defendants_____

   _____

11-CV-00623-CMP

2. Court (give name of District) _____

_____

3. Docket Number _____

4. Name of judge whom case was assigned _____

5. Disposition (For example, was the case dismisses as frivolous or for failure to state a claim? Was it appealed? Is it still pending?)

_____

_____

6. Approximate date of filing lawsuit. _____

7. Approximate date of disposition. _____

II.   **Place of Present Confinement:** _____

   A. Is there a prisoner grievance procedure available at this institution?
      ☒ Yes    ☐ No
   B. Have you filed any grievances concerning the facts relating to this complaint?
      ☐ Yes    ☒ No    If your answer is "NO", explain why not:
      This Incident didn't Happen In this facility
      _____

   C. Is the grievance process completed?   ☐ Yes    ☒ No

   If your answer is YES, **attach a copy of the <u>FINAL</u> Grievance Resolution for Any grievance concerning facts relating to this case.**

III.   **Parties to this Complaint**

   A. Name of Plaintiff: CHARLES S. Smith    Inmate No: 839366

      Address: WAshington Correction Center, P.o. Box 900, Shelton ~~<del>illegible</del>~~
      WA, 98584

   (In item "B" below, place the full name of the defendant, his/her official position, and his/her place of employment. Use item "C" for the names, positions and places of employment of any additional defendants. Attach additional sheets if necessary.)

   B. Defendant BenjAmin L. Kelly : official position Police Officer

      Place of employment Seattle Police department ~~<del>illegible</del>~~
      South precint

01 FD – Western District 1983                                       10/11

C. Additional Defendants: Seattle police department

IV.  **Statement of Claim:**

Violation of the 4th, 8th and 14th Admendment, wRongful Emprisonment

V.  **Relief**

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statues.)

Amount determind AT Trial by a Jury.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 30th day of MARCH, 20 11 .

Charlie S. Smith
(Signature of plaintiff)

Honorable John C. Coughenour

C11-0623

FILED
LODGED     MAIL
RECEIVED

APR 12 2011

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHARLES SHATEEK SMITH,

    Defendant.

NO. CR09-0161-JCC

ORDER OF DISMISSAL

Based on the Motion brought by the government (Dkt. No. 37), it is hereby ORDERED that the Indictment for Defendant CHARLES SHATEEK SMITH is DISMISSED without prejudice, and the arrest warrant is herein QUASHED. Defendant's Detention Order is vacated, and Defendant should be released from custody at the earliest opportunity.

DATED this 21st day of August, 2009.

           /s/ John C. Coughenour
           JOHN C. COUGHENOUR
           United States District Judge

Presented by:

/s/ C. Andrew Colasurdo
C. ANDREW COLASURDO
Special Assistant United States Attorneys

Order Granting Government's Motion to Dismiss - 1
United States v Charles Shateek Smith, CR09-0161-JCC

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES, <br><br> Plaintiff, <br><br> v. <br><br> CHARLES SHATEEK SMITH, <br><br> Defendant. | Case No. CR09-0161-JCC <br><br> ORDER |

This matter comes before the Court on Defendant's Motion to Suppress Evidence (Dkt. No. 19), the Government's Response (Dkt. No. 24), and Defendant's Reply (Dkt. No. 30). Having thoroughly considered the parties' briefing, the testimony presented at the evidentiary hearing, and the remainder of the relevant record, the Court hereby GRANTS the motion for the reasons explained herein.

I.   BACKGROUND

On January 30, 2009, at night, Seattle Police Officers David Ellithorpe and Benjamin Kelly were monitoring the intersection of Rainier Avenue South and South Henderson Street. Officer Ellithorpe was parked in the Bank of America parking lot on the Southwest corner of the intersection. (*See* Ellithorpe Statement (Dkt. No. 24-2 at 5).) Officer Kelly was driving North on Rainier Avenue. (*See* Kelly Statement (Dkt. No. 24-2 at 2).) Officer Kelly's camera was activated and recording, but Officer Ellithorpe's was not.

ORDER
PAGE - 1

A group of individuals, mostly young adults, began to cross Rainier Avenue approximately 100 feet south of the intersection, apparently to catch a southbound bus. (*Id.*) Both officers witnessed the crossing and claimed that one individual, Defendant Charles Smith, stood out from the group as being older and slower-moving. (*Id.*) The officers each briefly shined their spotlights on the group of individuals as they walked, and Officer Kelly pulled across incoming traffic, activated his overhead light, and pulled in front of the group of youths. (*Id.*) The video demonstrates that, by the time the patrol car had come to a stop, Mr. Smith had already passed in front of the car and was walking on the sidewalk. The audio track of the recording is absent for this early section of the video, so it is impossible to know what was said, but Officer Kelly testified that he said something like "you with the blue jacket, come over here." Mr. Smith allegedly "ignored" the order and continued walking away. (*See id.*; Ellithorpe Statement (Dkt. No. 24-2 at 5).)[1] Officer Kelly then began yelling at Mr. Smith; this expletive-laden outburst is captured by the video recording and sounds to the Court like, "Come here. [pause] Fucking asshole, when I tell you to fucking get over here, you get the fuck over here."

At this point, Officer Kelly placed Mr. Smith under arrest for Pedestrian Interference, a misdemeanor under the Seattle Municipal Code. Officer Kelly testified that no more than five seconds elapsed between when Mr. Smith crossed the street and when he was seized. A search-incident-to-arrest uncovered a concealed firearm, leading to Mr. Smith's current federal indictment for being a felon in possession of a weapon, in violation of 18 U.S.C. § 922(g)(1).

---

[1] Officer Kelly testified at the hearing that Mr. Smith did not in fact "ignore" his order, but instead turned towards him and looked him in the eye before turning back around to walk away. The Court finds this portion of Officer Kelly's testimony not to be credible given the tension between it and his contemporaneous written statement. (*See* Kelly Statement (Dkt. No. 24-2 at 2) (stating that "SMITH ignored my order and started walking away from me" without mentioning that he had turned to make eye-contact)

ORDER
PAGE - 2

1    Mr. Smith now moves to suppress the weapon seized from the search-incident-to-arrest,
2 arguing that the officers had neither probable cause to arrest him nor any reasonable,
3 articulable suspicion that he was armed. (Mot. 1 (Dkt. No. 19); Reply 1 (Dkt. No. 30).)

4 **II.    DISCUSSION**

5    The Government provides three possible justifications for the officers' search. First, it
6 claims that the officers had probable cause to arrest Mr. Smith for Pedestrian Interference
7 based on the manner in which he crossed the street. (Resp. 5–9 (Dkt. No. 24).) Second, it
8 claims that the officers had probable cause to arrest Mr. Smith for Obstructing a Public Officer
9 based on his failure to immediately comply with Officer Kelly's first order to come over. (*Id.*
10 at 9–10.) Third, it argues that, even if the officers did not have probable cause to make an
11 arrest, they had a reasonable suspicion that Mr. Smith was armed and therefore had authority to
12 conduct a "pat down" search under *Terry v. Ohio*, 392 U.S. 1, 30 (1968). (*Id.* at 10–12.)

13    **A.    Pedestrian Interference**

14    Seattle Municipal Code § 12A.12.015(B)(1) makes it a misdemeanor to "intentionally
15 . . . [o]bstruct[] pedestrian or vehicular traffic," which means to "walk, stand, sit, lie, or place
16 an object in such a manner as to block passage by another person or a vehicle, or to require
17 another person or a driver of a vehicle to take evasive action to avoid physical contact."

18    In 1990, the Washington Supreme Court considered a challenge to § 12A.12.015(B)(1),
19 alleging that it was unconstitutionally overbroad and vague and that it violated equal
20 protection. *City of Seattle v. Webster*, 802 P.2d 1333, 1334 (Wash. 1990). The Court upheld the
21 statute, finding a specific intent requirement that "saves it from being unconstitutionally
22 overbroad." *Id.* at 1338. The Court made clear that it is not enough to take an action that
23 "consequentially block[s] traffic or cause[s] others to take evasive action"; instead, to be
24 properly charged with Pedestrian Interference, one must "stand, sit, walk, or place an object
25 with the *intent* to cause another person or a driver of a vehicle to take evasive action." *Id.* at
26 1338–39 (emphasis added); *see also State v. Greene*, 983 P.2d 1190 (Wash. Ct. App. 1999)

ORDER
PAGE - 3

1   (finding that officers had probable cause to believe the defendant intended to obstruct traffic
2   because he "stepped right into the path of [an] oncoming patrol car" while "looking directly at"
3   the car, which had to swerve to avoid hitting him.)
4       Washington's criminal code distinguishes between "knowledge" and "intent." *See*
5   WASH. REV. CODE § 9A.08.010. "A person . . . acts *knowingly* . . . when . . . he or she is aware
6   of a . . . result described by a statute defining an offense." *Id.* § 9A.08.010(1)(b)(i) (emphasis
7   added). In contrast, "[a] person acts . . . *intentionally* when he or she acts with the *objective or*
8   *purpose* to accomplish a result which constitutes a crime." *Id.* § 9A.08.010(1)(a); *see also State*
9   *v. Caliguri*, 664 P.2d 466, 505–06 (Wash. 1983) (explaining that "'intent' to kill . . . means
10  more than merely 'knowledge' that death will result" because "'[i]ntent' exists only if a known
11  or expected result is also the actor's 'objective or purpose'").
12      To arrest an individual for Pedestrian Interference, therefore, it is insufficient to show
13  that the individual took an action *knowing* that it would cause traffic to stop; instead, the
14  officers must have probable cause to believe that the "objective or purpose" of the individual's
15  action was to the stop traffic. *See Webster*, 802 P.2d at 1339. At the hearing, Officers
16  Ellithorpe and Kelly repeatedly demonstrated their misunderstanding of this legal standard, as
17  both appeared to believe that one was guilty of Pedestrian Interference whenever one takes an
18  action that forces traffic to stop. Under *Webster*, the mere fact that traffic has to stop, or even
19  knowledge that traffic will be stopped, is insufficient to support a charge.
20      Having independently reviewed the video from Officer Kelly's patrol car, the Court
21  concludes that the officers lacked probable cause to believe that Mr. Smith's "objective or
22  purpose" in crossing the street was to stop the flow of traffic.[2] Mr. Smith crossed the street

---

[2] "'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

ORDER
PAGE - 4

more slowly than the other jaywalking individuals, who were running, but considered objectively, his pace was not exceedingly slow. Moreover, because Mr. Smith crossed the street in the middle of a group of jaywalkers, his running (rather than walking) across the street would not likely have allowed traffic to resume any sooner.[3] As a result, the Court finds that Mr. Smith's jaywalking at a normal walking pace does not suggest an "objective or purpose" to stop traffic.

At one point in the crossing, Mr. Smith slowed down and glanced at an approaching car. Officers Kelly and Ellithorpe blow this incident completely out of proportion in both their statements and their testimony. Officer Ellithorpe reported that Mr. Smith "lingered in a southbound vehicle traffic lane and stared-down the driver of one car as though challenging the motorist." (Ellithorpe Statement (Dkt. No. 24-2 at 5).) Officer Kelly went further and testified that Mr. Smith stopped in the lane and stared-down the driver "for a long period of time." The video, however, tells a far different story. As Mr. Smith reached the end of the northbound left-hand turn lane, a car approached in the southbound lane just as there was a break in the pedestrians. *Before* entering the southbound lane, Mr. Smith and another jaywalker slowed down, seemingly to determine whether the approaching car was going to forge its way through or allow them to pass in front of it. When the car stopped, Mr. Smith and the other jaywalker continued across the street. If anything, this incident undercuts the Government's theory that Mr. Smith's objective was to block traffic.

None of this is meant to condone or trivialize Mr. Smith's conduct. By jaywalking across a crowded arterial on a rainy night, Mr. Smith put himself, and possibly others, in danger. His leisurely pace also demonstrated a frustrating lack of respect for the value of

---

[3] There may have been a brief second at the end of Mr. Smith's crossing where he was the sole jaywalker blocking traffic, but this does not load to an inference of specific intent to block traffic. Ironically, at that point, it was Officer Kelly's patrol car that was blocking the lane after he swerved into oncoming traffic to make the arrest.

ORDER
PAGE - 5

others' time. However, jaywalking in a disrespectful manner is not, in and of itself, a crime. The case law makes clear that conduct only rises to the level of Pedestrian Interference if the "objective or purpose" of that conduct is to block traffic. Here, Mr. Smith's conduct would have been utterly unremarkable had he been crossing the street at a crosswalk. Any reasonable observer would conclude that the objective and purpose of his midblock crossing was simply to cross the street, not to block traffic. Therefore, Officers Kelly and Ellithorpe lacked probable cause to arrest Mr. Smith for Pedestrian Interference.

### B.     Obstructing a Public Officer

In the alternative, the Government argues that the officers had probable cause to arrest Mr. Smith for Obstructing a Public Officer. (*See* Resp. 9–10 (Dkt. No. 24).) Seattle Municipal Code 12A.16.010(A)(2) makes it a gross misdemeanor to "intentionally hinder[] or delay[] a public officer by disobeying an order to stop given by such officer." The Washington Revised Code contains a similar provision: "A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." WASH. REV. CODE § 9A.76.020. The Government claims that by disregarding Officer Kelly's order to "come over here," Mr. Smith was guilty of both of these obstruction statutes. (*See* Resp. 9–10 (Dkt. No. 24).)

Officers Kelly and Ellithorpe were lawfully entitled to "stop" Mr. Smith. Even though his crossing did not rise to the level of misdemeanor Pedestrian Interference, it undoubtedly constituted jaywalking, which is a traffic infraction in Seattle. *See* SEATTLE MUNI. CODE § 11.14.100 ("No pedestrian shall cross the roadway between adjacent intersections at which traffic-control signals are in operation, except in a marked crosswalk.") Because the officers had witnessed Mr. Smith jaywalking, they were entitled to stop him to issue a citation.[4]

---

[4] Stopping him to issue a citation would not be considered an arrest, however, and hence could not itself justify the search-incident-to-arrest that uncovered Mr. Smith's firearm.

ORDER
PAGE - 6

Case 2:11-cv-00623-RAJ   Document 8   Filed 04/22/11   Page 11 of 14
Case 2:09-cr-00161-JCC   Document 36   Filed 08/20/09   Page 7 of 8

Nonetheless, Mr. Smith's actions cannot justify an arrest for obstruction. Officer Kelly testified that no more than five seconds elapsed between when Mr. Smith crossed the street and when he was actually seized by Officer Kelly. At some point in those five seconds, Officer Kelly allegedly ordered, "you with the blue jacket, come over here." On this winter night (which Officer Ellithorpe testified as being "typical Seattle" "cold and rainy") most, if not all, of the youths on the sidewalk were wearing jackets. Each of them had just crossed the street together. There is no credible evidence that, in those mere five seconds, Mr. Smith heard Officer Kelly's command or that, if he did, that he immediately understood that it was directed at him. Therefore, it would have been unreasonable to presume that Mr. Smith *intentionally* disobeyed Officer Kelly's order or *willfully* obstructed the officers in their duties. SEATTLE MUNI. CODE § 12A.16.010(A)(2); WASH. REV. CODE § 9A.76.020. Moreover, an obstruction charge requires "that the action or inaction *in fact* hinders, delays, or obstructs." *See State v. Contreras*, 966 P.2d 915, 919 (Wash. Ct. App. 1998) (emphasis added). The Court is unconvinced that the time-span between Officer Kelly's order and Mr. Smith's seizure (no more than five seconds) in fact caused an actual hindrance or delay. For those reasons, the officers lacked probable cause to arrest Mr. Smith for obstruction.

### C. Reasonable Suspicion that Mr. Smith was Armed

Finally, the Government argues that Officers Kelly and Ellithorpe reasonably suspected Mr. Smith of being armed and hence were justified in conducting a "pat down" search. Under *Terry*, an officer may perform a minimal "pat down" if he or she has a reasonable and articulable suspicion that the suspect is armed and dangerous. *See* 392 U.S. at 21, 30.

The Government provides nine factors that it claims contributed to a reasonable suspicion that Mr. Smith was armed. (Resp. 11–12 (Dkt. No. 24).) Two of the factors concern Mr. Smith's conduct after his arrest and hence cannot be used to justify the search and seizure. Two of the factors ("the intimidating way he stared-down one of the motorists" and "the fact that [Mr.] Smith ignored Officer Kelly's command and chose to walk away") are unsupported

ORDER
PAGE - 7

by the evidence, as described above. Two other factors ("the attitude conveyed by the cocky, self-assured manner in which [Mr.] Smith walked across the street" and "the fact that [Mr.] Smith appeared to be under the influence of alcohol and/or drugs") bear absolutely no connection to the officers' "suspicion" that Mr. Smith was armed.

Thus, the Government is left with only three arguable considerations: (1) the fact that the area in question is known for gang violence, (2) that Mr. Smith was wearing "bulky," "loose fitting clothing" that could potentially conceal a weapon, and (3) that Mr. Smith's left arm was inside the body of his jacket, with the sleeve hanging loose. (Resp. 11 (Dkt. No. 24).) As to this last consideration, the video demonstrates that he had been carrying his arm in this fashion while crossing the street, before the police ever made contact with him. Therefore, the Government is essentially asking the Court to ratify a search for weapons based only upon the suspect's clothing style and the characteristics of the neighborhood in which he is found. The Court believes that this approach would be extremely problematic and could leave countless residents of lower-income neighborhoods open to debasing, humiliating searches. Such broad search authority cannot be reconciled with the Fourth Amendment's strict prohibition against "unreasonable searches and seizures." U.S. CONST. amend. 4.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress (Dkt. No. 19) is GRANTED.

DATED this 20th day of August, 2009.

John C. Coughenour
United States District Judge

# United States District Court
# Western District of Washington

CHARLES SHATEEK SMITH                SUMMONS IN A CIVIL CASE

v.                                    CASE NUMBER:_____

TO: Benjamin L. Kelly
    (Name of Defendant(s))
    SEATTLE Police Department
    (Address of Defendant(s))

_____
(City)      (State)      (Zip)

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF/ PLAINTIFF'S ATTORNEY (name and address)

_____
_____
_____
_____

An answer to the complaint which is herewith served upon you, within _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for relief demanded in the complaint. You must also file your answer to the clerk of this court within a reasonable period of time after service.

_____        _____
Clerk                                   Date

_____
(By) Deputy Clerk

# RETURN OF SERVICE

I made Service of the Summons and Complaint        Date _____

_____                     _____
Name of server (*print*)                           Title

**Check one box below to indicate appropriate method of service**

☐   Served personally upon the defendant. Place where served: _____

    _____

☐   Left copies thereof at the defendant's dwelling house or usual place of abode with
    a person of suitable age and discretion then residing therein.
    Name of person with whom the *summons and complaint* were left:

    _____

☐   Return Unexecuted: _____

    _____

    _____

☐   Other (*specify*): _____

    _____

    _____

## STATEMENT OF SERVICE FEES

_____        _____        _____
(Travel)                   (Services)                 (Total)

## DECLARATION OF SERVER

I Declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____                   _____
            (Date)                           (Signature of Server)

                                             _____
                                             (Address of Server)